WEBSTER, Appellant, vs. HEYROTH and another, Respondents.

*May 4—June 6, 1950.*

*Wm. A. Schroeder* and *C. M. Hanratty,* both of Milwaukee, for the appellant.

For the respondents there was a brief by *Hannan, Johnson & Goldschmidt,* attorneys, and *Herbert L. Wible* of counsel, all of Milwaukee, and oral argument by *Mr. Wible.*

FRITZ, C. J. The accident in question happened after midnight in the intersection of West National avenue, extending east and west, and South Twenty-Seventh street, which extends north and south, and is a wide street with a center grassplot fourteen feet wide between an east and a west driveway,—28 feet wide,—for north and southbound traffic, respectively. At the corners of the intersection there were the customary red, green, and amber automatic traffic-signal lights for the regulation and control of vehicular and pedestrian traffic. The defendant Heyroth, driving his automobile northward on the east driveway, entered the intersection about seven feet to the west of a northbound bus which had stopped at the east curb of South Twenty-Seventh street. The plaintiff Webster was the first passenger who alighted from the front door of the bus and he intended to walk across South Twenty-Seventh street from the southeast to the southwest corner of the intersection. The south crosswalk at that intersection was marked by two painted yellow lines. The north line was an extension westward of the south curb line of West National avenue and the south line was ten feet south of the north line. For the traffic-signal lights at the southeast corner of the intersection there was an iron utility pole about eight feet south of the south line of the crosswalk; and the bus from which plaintiff alighted stopped somewhat to the south of that pole to discharge and take on passengers.

The crucial issues under the evidence introduced on the trial were (1) whether plaintiff walked within the painted lines of the marked crosswalk, or whether he was south

thereof, when he was struck by the right front corner of the bumper of Heyroth's car; and (2) whether, if plaintiff was on the crosswalk and was the first to enter the intersection, the signal lights were then in his favor, or whether, if Heyroth was the first to enter the intersection, the signal lights were then in his favor.

Without apparent dispute the evidence establishes that when plaintiff was struck by the automobile bumper he was at a point about seven feet beyond, or that he had taken one or two steps beyond the west side of the parked bus, which was about eight feet wide and was standing one to three feet from the east curb of the street; and that upon being struck plaintiff fell and rolled ahead and came to a stop on or just north of the south crosswalk, and the front of the automobile was brought to a stop on the crosswalk with its rear end about even with the front of the bus.

Although there is considerable confusion and even some conflict in plaintiff's testimony as to the direction and the point to which he had walked when he was struck by the automobile, there is testimony which the jury could consider credible to the following effect: That plaintiff was crossing at a point about three feet north of the south edge of the pedestrian crosswalk; that he walked a straight line to the west after he crossed in front of the bus; that he had gone about fourteen feet and was nearly midway between the southeast corner of the street and the boulevard when he froze and did not move, and was facing west. In view of that testimony there was an issue for the jury as to whether plaintiff was walking on the marked crosswalk when defendant's car collided with him; and he was entitled to have that issue submitted for determination by the jury, although there was considerable evidence which would have warranted a jury finding in favor of the defendants.

In relation to the automatic traffic-signal lights at the time plaintiff entered the crosswalk, he testified:

The light was red facing the north. The light turned to amber as I stepped from the curb to the street. By the time I had reached the outer end of the bus, the light had changed to red. I looked at the light on the northwest corner. I noticed the light on the southeast corner when I got off the bus. As I stepped off the bus, the lights were green and as I walked north I noticed the light changed. The light changed from green to amber. The light was changing from amber to red as I left the curb. I glanced to the northwest corner and I noticed the light had changed to red. This was just before the impact. As I left the curb, the light was amber with the green. They were on together. The light was red a fraction of a second before I was struck.

As there thus was evidence that when plaintiff left the east curb and entered the crosswalk the light was amber with green and they were on together, and there was undisputed evidence that while the lights were green or amber in favor of westbound traffic the lights controlling northbound traffic were red, there was likewise an issue of fact which should have been submitted to the jury, although again there was considerable proof to the contrary. Under the circumstances there was applicable the rule that,—

". . . if the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is a question for the jury should be firmly adhered to, and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict. . . ." *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 115, 228 N. W. 741.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.